IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION AND SIERRA CLUB,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND STEPHEN L. JOHNSON, Administrator, U.S. EPA,<br><br>    Defendants.<br>_____/ | No. C 05-05184 WHA<br><br><br><br>**ORDER DENYING MOTION TO INTERVENE** |

## INTRODUCTION

In this action alleging failure of defendants Environmental Protection Agency and its Administrator, Stephen L. Johnson, to review air-pollution regulations, the American Petroleum Institute and the National Petrochemical and Refiners Association apply to intervene. Applicants' interest in the purely procedural issues presented by this action are contingent and attenuated. They therefore lack the significantly protectable interest required to have a right to intervene. Their claimed interest is also too weak to justify permissive intervention. The motion therefore is **DENIED**.

## STATEMENT

Plaintiffs Our Children's Earth Foundation and the Sierra Club allege that defendant Stephen L. Johnson failed to perform nondiscretionary duties to review emissions standards for existing (as opposed to new) petroleum refineries (Compl. 1, ¶ 4). The Clean Air Act requires

1  the Administrator to "review, and revise as necessary . . . emission standards . . . no less often
2  than every 8 years." 42 U.S.C. 7412(d)(6).  The standards are based partly on what pollution-
3  control technology is available.  42 U.S.C. 7412(d)(2)–(3).  The relative health risks of various
4  amounts of emissions is also a factor.  42 U.S.C. 7412(f)(2).  Plaintiffs sought, in their
5  complaint, (1) a declaration that the Administrator unlawfully had failed to perform his duty to
6  review the regulations, (2) an injunction requiring him to issue proposed rules and final rules (or
7  a finding that none is needed) within six months, and (3) litigation costs (Compl. 11–12).

8  Defendants do not dispute liability for not having conducted the review process on time
9  (Defs.' Resp. 1).  The last time they issued a rule was in 1995, putting them about 2.5 years
10 behind schedule.  *See* National Emission Standards for Hazardous Air Pollutants: Petroleum
11 Refineries, 60 Fed. Reg. 43,244 (Aug. 18, 1995).  Defendants and plaintiffs have lodged a
12 proposed consent decree to settle this action.  The proposed decree would drop the schedule
13 requested in the complaint.  Instead, it would require the EPA to propose revisions to the
14 emission levels, or propose that no revisions are needed, within twelve months.  By a year later,
15 the EPA would be required to produce final revisions or a final determination that none are
16 needed (Consent Decree ¶¶ 4–5).  The decree is only proposed because it must go through a
17 period of public comment on it.  After the comments are received, the EPA must consider them
18 before deciding whether to agree to the final decree (Notice of Lodging Consent Decree ¶¶
19 1–3).  *See* 42 U.S.C. 7413(g) (public-comment requirement).

20 Intervenor applicant National Petrochemical and Refiners Association represents more
21 than 450 petroleum-refining and petrochemical companies (Slaughter Decl. ¶ 2).  The other
22 applicant, American Petroleum Institute, represents more than 400 oil and gas companies,
23 including some that own and operate petroleum refineries in the United States (Ng Decl. ¶¶ 2,
24 4).  A change in the regulations might affect the operations of both associations' members (*id.*
25 ¶¶ 3, 5; Slaughter Decl. ¶¶ 4–5).

## ANALYSIS

### 1. INTERVENTION AS OF RIGHT.

A court must permit a party to intervene in a civil action if (1) that party claims a "significantly protectable interest" relating to the property or transaction which is the subject of the action, (2) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest, (3) the motion is timely and (4) the applicant's interest is not adequately represented by existing parties. FRCP 24(a); *Donaldson v. United States*, 400 U.S. 517, 542 (1971) (requiring "significantly protectable interest"). The rule must be interpreted broadly in favor of intervention. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995).

Plaintiffs' only objections to the motion are (1) that applicants do not have an adequate interest in the "property or transaction which is the subject of [this] action," FRCP 24(a)(2); (2) that applicants are represented adequately by defendants and (3) that the motion is moot because of the consent decree. Defendants do not object.[1]

The first step in analyzing whether applicants have a protected interest is to determine the subject of the action. This action does not concern property. It concerns instead a process: the agency review of the regulations. Such a process is treated as a "transaction" under FRCP 24(a)(2). The relevant issues are both *whether* the review is mandated and late and, if it is, by *when* it actually will be completed.

Refineries owned by applicants' members are affected by EPA emissions rules. Applicants worry that more stringent regulations would increase their members' costs (Br. 4). Their "central concern," however, is that defendants will not be able to do a "sound job" on the review within the time period proposed in the decree (Reply 8). Applicants misstate the relevant time period as twelve to fourteen months.[2] In fact, that is how long the EPA would

---

[1] Applicants mistakenly impute to defendants an opposition to applicants' intervention in the liability phase (Reply 6). Although defendants would acquiesce in applicants' intervention in the remedial phase, they took no position on intervention in the liability phase (Defs.' Resp. to Mot. to Intervene 2).

[2] Although a twelve-month deadline is set, an extension of up to sixty days is permitted upon stipulation of the parties or upon court order (Compl. ¶ 6).

3

have to make a proposal. It would have *another* twelve to fourteen months to make revisions. Applicants also claim that the emissions-technology review sought by plaintiffs may not be required if the EPA has determined that pollution levels are safe (Reply 3–4). Applicants do not, however, claim that EPA has found the pollution levels to be safe. This issue therefore does not state an interest related to this action.

At the hearing, discussion focused on whether or not the emissions-technology review is mandatory or discretionary. It also focused on the related subject of whether the review must be performed independently or in conjunction with assessment of health dangers likely to remain after implementation of new technology. This issue, while significant, does not have a direct bearing on applicants' entitlement to intervene. It goes instead to the merits of the question, "Is the EPA's duty discretionary?" Whichever way this question is answered, applicants' interest in the question remains the same. In other words, applicants' interest must be evaluated in light of the questions presented, not by the ultimate answers to them. The merits of the issues mentioned immediately above therefore will be deferred to another day.

Applicants may adequately protect their members' financial interests by advocating for less stringent standards *during the EPA rule-making process itself*. The Administrator must consider such comments because the Clean Air Act requires that he consider the cost of emissions control when promulgating rules. 42 U.S.C. 7412(d)(2). *The substantive content of any new regulations, is not, however, a subject of this lawsuit.* The only issue is whether the Administrator will review the rules and by when he will act on the findings of his review. This lawsuit will not determine whether the rules will change, much less what any changes might be. Applicants' financial interests in the regulations' content therefore do not relate directly to the transactions that are the subject of this action. For that reason, those interests do not provide a basis to intervene.

Without a review process, of course, the standards will remain the same, thus preventing increases in pollution-control spending at refineries. The connection between this lawsuit and any potential increase is, however, too vague, attenuated and contingent to satisfy Rule 24(a). Applicants cite no authority stating that such a speculative connection is enough. If it were, we

4

would face an unwieldy group of intervenors. People who breathe polluted air (*i.e.*, almost everyone) could intervene because weaker regulations would increase their health costs. The interest requirement's purpose is to involve "as many apparently concerned persons as is compatible with efficiency and due process." *Portland Audubon Soc'y. v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989). Such a crush of intervenors would not be compatible with efficiency and might impede the original parties due-process interest in prompt adjudication.

Applicants also have no protectable interest in preventing defendants from conducting the review. If the Administrator decided on his own to review the regulations, applicants would not have a basis to stop him. Nor do they allege that they would have such standing.

Finally, applicants have no protectable interest in delaying the review process longer than 28 months, the maximum total time proposed from entry of the decree until a final decision. They do not cite any authority for the proposition that 28 months is too quick, especially given that defendants admit they are already 2.5 years late. Instead, applicants offer the bald assertion that the fourteen-month period until the initial proposal "is lightening speed in the federal bureaucracy" (Reply 7). One is tempted to say that it is about time. There is nothing wrong with lightening speed if it produces lawful results. During the review, applicants will have a protected interest in addressing the content of the regulations. If the review's speed causes substantive deficiencies in any final rules, applicants then might have a protected interest. But mere speculation, before the process has even begun, is not enough.[3]

In similarly attenuated circumstances, the Supreme Court and the Ninth Circuit have upheld the denial of a motion to intervene. In *Donaldson v. United States*, the Supreme Court held that a person under civil investigation for failure to pay income tax did not have a protectable interest in preventing his former employer from disclosing its employment records to the Internal Revenue Service. The taxpayer was concerned that disclosure of the records might eventually lead to a financial obligation for him. But such a speculative fear of the consequences was not enough. The court held that "the taxpayer's interest is not enough and is

---

[3] Applicants also fail to acknowledge that the decree's schedule is not set in stone. Upon motion, it would be subject to modification by the Court.

5

not of sufficient magnitude for us to conclude that he is to be allowed to intervene." 400 U.S. at 542.

In *Portland Audubon Society v. Hodel*, the Ninth Circuit held that a logging contractors and a logging advocacy group did not have a sufficient interest to intervene in a claim that the federal government had violated its environmental-review duties. 866 F.2d 302, 310 (9th Cir. 1989). The applicants' economic interest was "based upon a bare expectation" because that they did not have permission to log in the areas affected by the claim. *Sierra Club v. EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993). The potential financial loss therefore was purely speculative. In contrast, *Sierra Club* involved pollution-discharge permits that already had issued. The court held that the existence of a vested interest in *Sierra Club* distinguished it from *Portland Audubon Society*, meriting intervention in the former whereas none was justified in the latter.

*Forest Conservation Council* also suggests that more direct connections are required than applicants here present. In that decision, the Ninth Circuit stated that the interest test was satisfied "when . . . the injunctive relief sought by plaintiffs will have *direct, immediate, and harmful effects* upon a third party's . . . interests." 66 F.3d at 1494 (emphasis added). The relief plaintiffs here seek would not have such an effect on applicants.

Neither the parties nor applicants have pointed to any appellate decisions that involved a motion to intervene made by regulated entities in a lawsuit seeking only to compel review of regulations. The Court's did not find any Ninth Circuit authority directly on point. Other circuits have spoken. In *American Lung Association v. Reilly*, 962 F.2d 258 (2d Cir. 1992), the plaintiffs alleged that the EPA had failed to comply with a requirement that it review ozone standards every five years. It sought an injunction requiring the EPA to either revise the standards or determine that none were needed, within six months. Electric utilities and their trade groups sought to intervene. The Second Circuit upheld the denial of the motion. The district judge had held that "the utilities' interest in the subject matter of the action was based on a 'double contingency' of events: 'first, the plaintiffs must prevail in this lawsuit and, second, the defendants mus then downwardly revise the [ozone standards]. . . . These interests were "too 'remote from the subject matter of the proceeding' and too 'contingent upon the

6

1  occurrence of a series of events.'" *Id.* 260–61. This decision therefore counsels denial of the
2  instant motion.[4]

3  Similarly, in *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318 (11th Cir. 1990), the applicant
4  was a group of electricity providers who sought to intervene on a claim that the EPA unlawfully
5  had approved of Florida's failure to identify particularly polluted waterways and to set water-
6  pollution limits for them. The plaintiffs sought to compel the EPA to identify the polluted water
7  bodies and set the rules itself. Applicants asserted an interest in this issue based on that fact
8  that, if the EPA review identified the waterways where they discharged pollution as subpar,
9  they would have to meet the new standards and therefore incur higher costs. The court held that
10 "whether [the applicant's] members discharge into a water body eventually specified as
11 [noncompliant] is purely a matter of speculation at this time. . . . [S]uch a generalized grievance
12 does not impart to [the applicant] the kind of legally protectable interest in the . . . litigation
13 necessary to support intervention as of right." *Id.* at 1322. This decision also supports the
14 result reached on the instant motion.

15 District court decisions also support the holding here. In *Cronin v. Browner*, 898 F.
16 Supp. 1052 (S.D.N.Y. 1995), electric utilities sought to intervene after environmental groups
17 and the EPA had proposed a consent decree. The applicants asserted an interest in whether
18 certain pollution rules had to be promulgated, the procedures for doing so and the rules'
19 ultimate content. The court held that

> where, as here, Proposed Intervenors can offer no evidence that (1) their views will not be taken into account in the administrative process . . .; (2) their interests will be prejudiced as a result of the timetable . . . contained in the Consent Decree; or (3) EPA is under any obligation imposed by the proposed Consent Decree to issue certain substantive regulations, or any regulations at all, there is simply no basis for concluding that intervention is warranted.

24 *Id.* at 1063. These findings apply equally to the instant motion.

---

[4] In the Second Circuit, orders on motions to intervene as of right are reviewed under a more lenient standard than in the Ninth Circuit. In the Second Circuit, the review is for abuse of discretion. *Am. Lung Ass'n*, 962 F.2d at 261. In the Ninth Circuit, it is de novo review except as to timeliness, which is subject to an abuse of discretion standard. *Forest Conservation Council*, 66 F.3d at 1493. There is nothing to indicate, however, that *American Lung Association* would have been decided differently under the more stringent standards of the Ninth Circuit.

7

In *Environmental Defense v. Leavitt*, 329 F. Supp. 2d 55 (D.D.C. 2004), an environmental group sued the EPA to force it to promulgate regulations it claimed were overdue. When an industry group sought to intervene, the parties already had proposed a consent decree that set deadlines for issuance of the regulations. The complaint and consent decree did not ask for any particular regulation. The applicant claimed to have a "protectable interest in ensuring that any rule promulgated by EPA . . . is adopted after due deliberation and is not artificially expedited." In short, the facts and arguments were almost identical to those relevant to the instant motion. The judge rejected the applicant's argument, holding that the group had failed to show "that the suggested timetable is inadequate or that modifications . . . are likely to be necessary, and that any such inadequacies or modifications would result in injury or impairment to [the applicant]." The court also noted that the decree would not affect "the substance of EPA's rulemaking, either by limiting or expanding EPA's authority." The same holding is appropriate in the instant motion.

A contrary result was reached by the late Judge Orrick in *Sierra Club v. Ruckelshaus*, 602 F. Supp. 892 (N.D. Cal. 1984). In that case, the EPA was late issuing air-pollution regulations and the Sierra Club sued for a judgement ordering the agency to issue the rules. A mining group moved to intervene. None of the parties opposed the motion. Judge Orrick granted it. He did not, however, analyze the sufficiency of the applicant's interest. Instead, he skipped to whether it would be impaired by the action. The instant order, by contrast, must focus on the interest requirement as both a statutory command and the chief contested issue on this opposed motion to intervene. To the extent this order runs counter to the result in *Ruckelshaus*, however, the Court respectfully disagrees with that order. *Id.* at 895–96.

Also, Judge Wilken reached an arguably contrary result in *Our Children's Earth Foundation v. U.S. EPA*, No. C 05-0094 CW (N.D. Cal.). In her Order Granting In Part and Denying In Part Motion for Leave to Intervene as Defendants, Judge Wilken permitted the same applicants to intervene in the remedy stage of the action, which concerned air-pollution from new (as opposed to existing) refineries. She ruled that the applicants had an interest in the rule-making procedures under 42 U.S.C. 7607. She held that their interest in the procedures was

8

threatened by the civil action, because the remedy might abridge the normal Section 7607 process. Order at 4 (May 4, 2005). In the instant action, applicants do not allege that the protections of Section 7607 would be affected. There is no reason to believe that they would be. The schedules proposed in both the complaint and the proposed consent decree appear to exceed the normal time periods for agency action required by Section 7607. *See* 42 U.S.C. 7607(d). Neither applicants nor any party argue to the contrary. Furthermore, to the extent that applicants have a protectable interest in the rule-making process, it is no greater than that of anyone else. To allow intervention as of right to so many would make a mess of the system. It also would not be compatible with the Ninth Circuit's stated goal of allowing the participation of "as many apparently concerned persons *as is compatible with efficiency and due process*," *Portland Audubon Soc'y.*, 866 F.2d at 308 (emphasis added).

This order concludes, for the reasons stated, that applicants do not have an significantly protectable interest in the subject matter of this lawsuit. They therefore have failed to satisfy a prerequisite to intervening as of right. The Court therefore has no need to analyze whether applicants are adequately represented by defendants.

### 2. PERMISSIVE INTERVENTION.

Applicants move alternatively for permissive intervention under Rule 24(b). To intervene under that rule, an applicant must show that it has a claim or defense that shares a question fact or law with the action. FRCP 24(b)(2). In deciding such a motion, a court must consider whether intervention would "unduly delay or prejudice the adjudication of the rights of the original parties." FRCP 24(b). To intervene under Rule 24(b), the applicant need not have any direct personal or pecuniary interest in the subject of the litigation. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002).

Applicants do not qualify for intervention under Rule 24(b) because they do not assert any claim or defense. They failed to comply with Rule 24(c)'s requirement that they submit, along with their motion, a "pleading setting forth the claim or defense for which intervention is

sought." Without filing such a pleading, applicants have not asserted any claim or defense at all. They therefore do not satisfy the prerequisites to discretionary intervention.[5]

## CONCLUSION

For the reasons stated, applicants' motion to intervene is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 11, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[5] This is not a situation where applicants allege that they are involved in related litigation, such that their absence here would result in a daisy-chain of litigation that might be resolved in one fell swoop if all parties were joined in this action. *Compare* Order Granting Mot. to Intervene, *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. C 04-4324 WHA (N.D. Cal. May 30, 2005).